UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                    Case Nos.:   3:08cr22/LAC/CJK
                                                   3:13cv560/LAC/CJK
DANIEL CASTLEMAN,

        Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

This matter is before the court on defendant Daniel Castleman's amended "Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255" and supporting memorandum. (ECF No. 1046). The Government responded in opposition (ECF No. 1112), and defendant filed a second amended reply. (ECF No. 1173). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not

raised any issue requiring an evidentiary hearing and the § 2255 motion should be

denied.    *See* Rules Governing Section 2255 Cases 8(a) and (b).

## BACKGROUND

Defendant and 13 others were charged in a 40-count superseding indictment

with various charges related to the international distribution of child pornography

via the internet.    (ECF No. 78; defendant Castleman charged in Counts 1, 2, 5, 17,

28, and 40).    After a 6-day jury trial, at which defendant was represented by court-

appointed counsel George Murphy, Esq., defendant was convicted of engaging in a

child exploitation enterprise ("CEE") in violation of 18 U.S.C. § 2252A(g) (Count

1); conspiring to advertise, transport/ship, receive, and possess child pornography

and obstruct an official proceeding in violation of 18 U.S.C. §§ 371, 1512(k),

2251(d)(1) and (e), and 2252A(a)(1) (Count 2); receiving child pornography in

violation of 18 U.S.C. § 2252A(a)(2) (Count 28); obstructing justice in violation of

18 U.S.C. § 1512(c); advertising the exchange of child pornography in violation of

18 U.S.C. § 2251(d)(1) and (2) (Count 5); and knowingly transporting and shipping

child pornography in violation of 18 U.S.C. § 2252A(a)(1) (Count 17).    (ECF No.

793).    Defendant retained William Kent, Esq. to represent him at sentencing.

Despite counsel's entreaties for a sentence of 240 months, the court sentenced

defendant to a term of life imprisonment as to Count 1, the statutory maximum of 360 months as to Counts 2 and 5, and 240 months as to Counts 17, 28, and 40, with the sentence on each count to run concurrently with the others.   (ECF No. 762 at 43-44).   In a consolidated appeal, the Eleventh Circuit vacated each defendant's convictions for conspiracy and statutory obstruction of justice in Counts 2 and 40. *United States v. McGarity*, 669 F.3d 1218, 1229 (11th Cir. 2012).   The opinion stated no fewer than 5 times that the evidence against the defendants[1] was nothing short of "overwhelming."   *Id.* at 1242, 1243, 1246, and 1263.

On August 16, 2012, the district court entered an amended judgment sentencing defendant to a term of life imprisonment on Count 1, 360 months on Count 5, and 240 months on Counts 17 and 28.   (ECF No. 913).   The Supreme Court denied certiorari, and defendant timely filed a motion to vacate, which he subsequently amended.   (ECF Nos. 1023, 1046).

As noted by the Government, the facts of this case are set forth in the superseding indictment, the transcripts of trial and sentencing, the Pre-Sentence Investigation Report ("PSR"), the second amended judgment and statement of

---

[1]  The opinion noted that all of the defendants except Castleman confessed their involvement with child pornography and the child pornography sharing ring in question.  *McGarity*, 669 F.3d at 1231.

Case Nos.: 3:08cr22/LAC/CJK; 3:13cv560/LAC/CJK

reasons, and the Eleventh Circuit's opinion on appeal (ECF Nos. 78, 720-25, 812, 903, 921-22, 1194, and 1207).   Therefore, the undersigned will provide an abbreviated recitation of the facts here and relay additional specific facts only as needed to resolve claims raised in the instant motion.

As set forth in the Eleventh Circuit's opinion on appeal, in 2005, an informant notified Constable Brenden Power of the Queensland (Australia) Police Service of the existence of a computer ring of child pornography users operating through internet newsgroups.   The informant revealed the newsgroups used by the ring, the ring's encryption method, and the informant's nickname within the ring, which enabled Constable Power to infiltrate the ring.   Constable Power began monitoring the ring and learned of its sophisticated nature, including controls on memberships and complicated methods of communicating and posting, by using encryption. Members uploaded scrambled and encrypted binary files in one newsgroup, then would place a message in another newsgroup advising of the location of the upload along with instructions.   Other members could download the encrypted message, decrypt and read it, and follow the instructions contained therein to locate and download files containing child pornography.   The group masked headings when

posting files and messages and frequently changed user nicknames as a further means of avoiding detection.

After realizing the ring operated internationally, Constable Power traveled to the United States in 2006 where he continued his investigation in conjunction with the FBI's Innocent Images Unit.   The joint investigation continued for another year, during which time law enforcement identified 22 members of the child pornography ring, 14 of whom were people of special interest.   Between August 31, 2006, and December 15, 2007, law enforcement detected the upload of over 400,000 images and more than 1,000 videos by ring members.   Not all of the images and videos portrayed child pornography, but many of them depicted sexual abuse of minors in graphic and grotesque detail.   Law enforcement traced numerous sexually explicit comments in response to other members' posts to defendant.

On February 28, 2008, law enforcement agents simultaneously executed search warrants at the residents of the defendants in this case.   Defendant Castleman did not answer his door, cell phone, or land line and, once agents finally secured entry, defendant was found standing in his living room while a "wipe and clean" program ran on his computer.   (ECF No. 762 at 30-31).   Defendant denied ever having molested or been accused of molesting any child.   (ECF No. 1206, PSR ¶

48).    His biological daughter, however, told law enforcement of years of molestation when staying with her father.    (ECF No. 1206, PSR at ¶¶55, 56). During the search, law enforcement recovered a CD that contained child pornography with a homemade label that read "To [name redacted] and her Dad from Vicky and her Dad Hope this helps to let [name redacted] know that it is ok for the two of you to play together like me and my dad."    (ECF No. 1206, PSR ¶ 49).

After their arrest, all defendants except Castleman confessed involvement with child pornography and the child pornography ring in question.    Encryption keys of the type provided to Constable Power to access the pertinent newsgroup postings were found in the possession of all but one of the defendants, including defendant Castleman.    *McGarity*, 669 F.3d at 1229-31.

<u>ANALYSIS</u>

<u>General Standard of Review</u>

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.    A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise

subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657

F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved

for transgressions of constitutional rights and for that narrow compass of other injury

that could not have been raised in direct appeal and would, if condoned, result in a

complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232

(11th Cir. 2004) (citations omitted).    The "fundamental miscarriage of justice"

exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides it

must be shown that the alleged constitutional violation "has probably resulted in the

conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues

raised in a § 2255 motion which have been resolved on direct appeal.    *Rozier v.

United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d

1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir.

1994).    In other words, once a matter has been decided adversely to a defendant on

direct appeal, it cannot be re-litigated in a collateral attack under § 2255.    *Nyhuis*,

211 F.3d at 1343 (quotation omitted).    Broad discretion is afforded a court's

determination of whether a particular claim has been previously raised.    *Sanders v.

United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by

different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under § 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a § 2255 motion and will be considered procedurally barred.  *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (*quoting Mills*, 36 F.3d at 1055).   Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a § 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error – that is, alternatively, that he is "actually innocent."   *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).   To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."   *Lynn*, 365 F.3d

at 1235.    A meritorious claim of ineffective assistance of counsel can constitute cause.    *See Nyhuis*, 211 F.3d at 1344.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).    Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d at 1301 (*citing Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.    *See Winthrop‒Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues

can be resolved by the court without a hearing.

In this case, the Government argues nearly all of defendant's substantive claims are procedurally barred or otherwise not properly before the court on collateral review.   Taken as stand-alone claims, the Government's assertions are largely well-taken.   Defendant's claims, however, are couched in terms of ineffective assistance of counsel, which can serve to defeat the procedural bar.   In the interest of brevity, the court will not reiterate the standard for, or engage in a discussion of, the procedural bar on each of defendant's substantive claims, recognizing that, absent the ineffective assistance of counsel claim, they likely are not cognizable on collateral review.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.   *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d, 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and he was prejudiced by this inadequacy.   *Strickland v.*

*Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). *Strickland*'s two-part test also applies to guilty pleas.    *Lafler v. Cooper*, 132 S. Ct. 1376, 1384-85 (2012) (*quoting Hill v. Lockhart*, 474 U.S. 52, 58 (1985), for the proposition that a defendant will be required to show that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on proceeding to trial).    A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.    *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (*quoting Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015).    A defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."    *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

The Sixth Amendment right to effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected."    *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (*citing Missouri v. Frye*, --- U.S. ----, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, ---U.S. ----, 132 S. Ct. 1376 (2012)).    A defendant who claims ineffective advice led him to reject a plea

offer must show that, but for the ineffective assistance of counsel, he would have accepted the plea and the conviction or sentence, or both, under the terms of the plea offer would have been less severe than under the judgment and sentence imposed. *Lafler*, 132 S. Ct. at 1385.    A defendant's insistence that he is innocent is a "relevant consideration" that "makes it more difficult to accept his claim" that he would have agreed to a plea deal.    *See Osley v. United States*, 751 F.3d 1214, 1224–25 (11th Cir. 2014).    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."    *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).    Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable

professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (*quoting Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing petitioner was "not entitled to error-free representation").    Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.    *Strickland*, 466 U.S. at 689.    To show counsel's performance was unreasonable, a defendant must establish "no competent counsel would have taken the action that his counsel did take."    *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.    "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314.    When reviewing the performance of experienced trial counsel, the presumption counsel's conduct was reasonable is even stronger because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

    With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.    *Strickland*, 466 U.S. at 694.    "The likelihood of a different result must

be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (*quoting Strickland*).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).    A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (*quoting Strickland*, 466 U.S. at 687).    Or in the case of alleged sentencing errors, a defendant must demonstrate there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001).    A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

　　　To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective assistance

are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that, given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."    *Chandler*, 218 F.3d at 1313.    This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.    *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).    The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's

performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."    *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.    A defendant's belief that a certain course of action counsel failed to take might have helped his case does not direct a finding counsel was *constitutionally ineffective* under the standards set forth above.    The court now turns to a review of each of defendant's claims in accordance with the standards set forth herein.

Defendant's Claims

     1.    Matter too Complex for Counsel

In Ground One, defendant contends his trial attorney, George Murphy, was constitutionally ineffective in his representation and defense because the matter was "too complex" for Mr. Murphy to understand.    Defendant notes the offense conduct in this case involved technical issues with things such as Internet Protocol addresses,

headers, and message ID's and argues counsel was ill-prepared to navigate the complexities of the case because he did not understand computers.

In support of his assertions, defendant references correspondence he received from Mr. Murphy after trial.   In a letter dated January 15, 2009, counsel provides detailed guidance to his client with respect to pre-sentencing, sentencing, and appeal and recommends an appellate attorney.   (ECF No. 1046 at 63-65).   In closing the three-page letter, counsel notes defendant was a "gentleman and a pleasure to know" and states "I am truly sorry I was not more computer savvy and thank you for your patience in trying to explain the various in [sic] and outs of the complex world of the computer."   (ECF No. 1046 at 64-65).   In a letter dated June 18, 2002, counsel stated "Remember Daniel and I said this on more than one occasion for this case was way beyond my knowledge of computer and the language that has developed." (ECF No. 1046 at 66).   Counsel noted there "were many a session when [defendant] had to explain to me what the government was doing and how to counter that information."   (*Id*.).   Defendant concludes these statements prove counsel's representation was constitutionally ineffective.

The Government argues defense counsel was at least as prepared as any other member of the multi-defendant team.   Counsel had a grasp of the case and the close

assistance of his client with whom he conferred personally on over a dozen occasions prior to trial, in addition to telephonic or written discussions.    (ECF No. 1112 at 13 and Exh. C).    Furthermore, as evidenced by defendant's own submissions, he was able and willing to assist counsel in various aspects of his defense, such as the preparation of, or at least offering input into, counsel's closing argument.    (ECF No. 1046 at 54).

In order to prove constitutionally deficient performance by counsel, a defendant must establish both deficient performance and prejudice.    In this case, defendant has failed to meet his burden with respect to the latter prong.    The undersigned recognizes the case may have been more complex than the average tried in this district.    Nevertheless, each of the able defense counsel, including Mr. Murphy, operated under the same burden.    Defendant has not established his attorney's lack of computer expertise prejudiced him because he has not established any of the claimed actions or omissions stemming from counsel's alleged lack of computer sophistication affected the outcome of the proceedings.    The quoted

material from counsel's letter addresses Mr. Murphy's computer deficiency, but it does not support a finding of prejudice.    Defendant is not entitled to relief.

    2.    <u>Failure to Object to Introduction of Evidence</u>

Defendant next contends counsel was constitutionally ineffective because he failed to object to the introduction of evidence that had been compromised, thus violating the Best Evidence Rule.    At trial, the Government, without objection by any defense counsel, introduced messages taken from what are commonly referred to as "digests."    Although the original, unaltered digests are in a ".txt" format, at trial, the FBI converted the digests from .txt format to Microsoft Word.    Defendant concedes this alone is not enough to sustain an objection, but points to Properties of Digest he appended to his motion.    (ECF No. 1046 at 55-62).    These attachments reflect the digests in question were "modified" after conversion to Microsoft Word. Defendant maintains that, because of this, the duplicate digests do not accurately reflect the originals and counsel should have objected to their admissibility.    The admission of the digests, according to defendant, violated the authentication requirement of Federal Rule of Evidence 901(a), The Best Evidence Rule of Rules 1001-1004, and the Rule of Completeness of Rule 106.    Defendant also contends

the failure of the Government to produce the unadulterated messages or digests violated his due process rights.

Defendant asserts that, "by failing to object to the alteration or revision, counsel was foreclosed from discovering what in fact was altered or revised and if the discovery would aid his defense.   (ECF No. 1046 at 29).   Defendant's assertion of prejudice is based only upon speculation; he does not have any proof that information relevant to his defense was somehow lost.   More significantly, the Government notes that Constable Power, who personally downloaded the original electronic postings, testified about them at trial and, during his testimony, the Government introduced the exhibits, Government's Exhibit 1-A and 1-B, in both text and binary format.   (ECF No. 720 at 55-56; ECF No. 1112 at 14).   Special Agent Wilder later testified that defendant's response to the post of another group member who was offering child pornography was part of this exhibit.   (ECF No. 721 at 399-400).

Defendant further complains the lack of objection resulted in the foreclosure of a jury instruction on spoliation.   (ECF No. 1046 at 30).   The speculative possibility such an instruction would have altered the outcome of the proceedings – or even been available – is not enough.   Moreover, the record reflects none of the

other seasoned defense attorneys made such an objection or requested such an instruction.   Hence, defendant has not established no reasonable attorney would have acted as his counsel did and thus has not shown he is entitled to relief.

Defendant's reply goes far beyond the matters addressed in his initial motion. He mentions numerous other evidentiary issues to which he believes counsel should have objected, such as the introduction of evidence characterized by Defendant as intended solely to "inflame the passions of the jury" and his counsel's stipulation to damaging evidence he contends should have been excluded.   (*See* ECF No. 1133 at 25-26).   He also assails the integrity of the prosecuting Assistant United States Attorney, accusing him of additional instances of prosecutorial misconduct.   A review of defendant's allegations does not reveal anything that would rise to the level of constitutionally deficient performance by counsel.   He therefore is not entitled to relief.

### 3.    Failure to File a Motion to Suppress

Defendant next asserts counsel was constitutionally ineffective because he failed to file a motion to suppress evidence defendant claims was unlawfully obtained.   Defendant essentially maintains the search warrant executed at his home was constitutionally infirm.   When counsel's alleged ineffectiveness involves a

failure to competently litigate a Fourth Amendment claim, in order to demonstrate actual prejudice, the defendant must prove his Fourth Amendment claim is meritorious and there is a reasonable probability the verdict would have been different absent the excludable evidence.    *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251-52 (11th Cir. 2010).    Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence excluded.    *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2000); *Huynh v. King*, 95 F.3d 1052, 1058–59 (11th Cir. 1996); *Thomas v. Newsome*, 821 F.2d 1550, 1552 (11th Cir. 1987); *see also Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005).

Defendant maintains the Government subpoenaed Usenetserver and requested the IP (Internet Protocol) address, user name, and all other relevant personal information, including an account number, for a message sent on March 10, 2007, with message ID number 7UsIh.22745$r73.10103@fe24.usenetserver.com.    The response the Government received allegedly pertained to a February 14, 2007, message bearing a different message number, originating from defendant's IP address.    Defendant describes this message as an "opentest" that did not contain

any illegal material and was not an advertisement for pornography.    Defendant asserts this single subpoena was insufficient to support the issuance of the search warrant that led to his arrest.    (ECF No. 1046 at 35).

Government Exhibit E is a copy of Special Agent Quigley's Application and Affidavit for Search Warrant.    (ECF No. 1112, Exh. E).    In the affidavit, Special Agent Quigley noted, as is standard, that the statements in the affidavit are based in part on information provided by other law enforcement officers, as well as his own experience, training, and background.    He further noted that, because the affidavit was submitted for the limited purpose of securing a warrant, he did not include every known fact concerning the investigation.    (ECF No. 1112-5 at 3-4).    The affidavit set forth the workings of the child pornography enterprise and explained the investigation in question was predicated upon information received from a cooperating individual who had been charged criminally in an unrelated child pornography investigation and law enforcement's successful infiltration of the enterprise based on information obtained from that individual.    (*Id*. at 22-28). Special Agent Quigley then described numerous postings identified as attributable to defendant and in which defendant referenced things such as the "pedo drive" and

made sexual comments indicating he had received child pornography or child exploitation materials.    (*Id*. at 29-32).

In order to obtain defendant's identity and physical location, the Government served an administrative subpoena seeking information about the individual who had posted the non-explicit message referenced above.    According to Usenetserver, the account used to post the message in question was owned by an individual using the username "bluegrasswater."    "Bluegrasswater's" "last known usable IP" address was traced to defendant Castleman.    After the issuance of additional administrative subpoenas, investigators obtained defendant's address and accessed an encrypted message that contained information and instruction regarding the download, decryption, and reassembly of files located in the newsgroups used by the child pornography enterprise.    (*Id*. at 35-37).    Once they had what they believed to be defendant's identity and address, investigators conducted surveillance to confirm Castleman actually resided at the address in question.    (*Id*. at 37-38).    The warrant sought permission to search the premises for information regarding the distribution,

transportation, advertisement, and/or receipt of child pornography via the internet and to seize evidence, fruits, and instrumentalities of the crime.

The search warrant affidavit did not misrepresent the content of message 7UsIh.22745$r73.10103@fe24.usenetserver.com.   Rather, it clearly reflected the message was part of the trail used to identify defendant Castleman's true name and physical location despite apparent attempts to conceal such information.   There was no viable basis upon which counsel could have moved to suppress the warrant, and he was not constitutionally ineffective for his failure to file a meritless motion.   *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (*citing Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue stems from trial or sentencing.   *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by

prosecutor or accurate statements by prosecutor about effect of potential sentence);
*Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for
failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d
1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which
he reasonably believes to be of questionable merit); *United States v. Winfield*, 960
F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to
preserve or argue meritless issue).

    4.    <u>Ineffective assistance of counsel based on Cumulative Errors</u>

       Defendant raises 12 instances of alleged error by counsel which, he contends,
together establish cumulative error and constitutionally deficient performance.
The cumulative effect of several errors harmless by themselves could so prejudice a
defendant's right to a fair trial that a new trial might be necessary even if the errors
considered individually are non-reversible. *See, e.g.*, *U.S. v. Ramirez*, 426 F.3d
1344, 1353 (11th Cir. 2005); *United State v. Preciado-Cordobas*, 981 F.2d 1206,
1215 n.8 (11th Cir. 1993) (*citing United States v. Pearson*, 746 F.2d 787, 796 (11th
Cir. 1984)); *United States v. Adams*, 74 F.3d 1093, 1099 (11th Cir. 1996); *United
States v. Thomas*, 62 F.3d 1332, 1343 (11th Cir. 1995).    Notably, however, "[a]
defendant is entitled [only] to a fair trial not a perfect one."    *United States v. Wilson*,

788 F.3d 1298, 1315 (11th Cir. 2015); *Ramirez*, 426 F.3d at 1353; *Lutwak v. United States*, 344 U.S. 604 (1953).     Moreover, the cumulative error doctrine is inapplicable where the district court commits no individual errors.     *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (noting that increasing the number of non-meritorious claims raised will not support a finding of cumulative error because "[t]wenty times zero equals zero").

The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims, a fact the Eleventh Circuit has noted.     *See Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009). In *Forrest*, the Eleventh Circuit cautioned that the Supreme Court has held "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."     *Id.* (*quoting United States v. Cronic*, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).     Thus, again, in the absence of any error, there can be no cumulative error.     *See United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006); *see also Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir.1993) (stating because

certain alleged errors did not rise to constitutionally ineffective assistance of counsel, and because certain other claims were meritless, a petitioner had "presented nothing to cumulate"); *accord Villanueva v. Stephens*, 555 F. App'x 300, 308 (5th Cir. 2014) (*citing Hall*).

The Government characterizes defendant's fourth ground for relief as a compilation of things he would have wanted, in retrospect, to have taken place. Nevertheless, for sake of completeness, this report briefly considers the individual allegations of error.  First, defendant raises counsel's failure to object to the testimony of co-defendant Warren Weber.  Weber testified, in response to a question from the Government, that while the co-defendants were housed together following their arrest, none stated he was innocent.  As the Eleventh Circuit observed, defendants objected to the inquiry, contending it was an improper comment on the defendants' right to remain silent, and the objection was overruled. After a thorough discussion, the Eleventh Circuit found no reversible error. *McGarity,* 669 F.3d at 1240-43.   The fact defendant's attorney did not specifically join in an objection ultimately ruled to be without merit was not constitutionally deficient, and defendant's suggestion otherwise is frivolous.

Defendant next asserts counsel was constitutionally ineffective for stipulating certain child pornography was attributable to defendant.   (ECF No. 721 at 396-402).   At trial, Special Agent Wilder testified about defendant's uploading of files and some of the messages defendant posted either commenting on or providing other enterprise members with access to files containing child pornography.   (ECF No. 721 at 395-402).   The Government published small portions of the files before introducing them into evidence.   At one point, counsel stated "We would acknowledge that these came from Daniel Castleman and so stipulate."   (ECF No. 721 at 401).   The Government nonetheless continued to publish the video, as well as defendant's comments posted in response to the video.   Shortly thereafter, the court recessed for the afternoon break.   Before doing so, it offered the reminder to counsel that "it is grossly improper to offer a stipulation in front of the jury, so please don't do that.   If you have something you want to discuss in advance, discuss it with the Government.   It's up to them whether they want to accept a stipulation or not."   (ECF No. 721 at 402).

Counsel did not thereafter call undue attention to his statement, but said during closing "if I said that my client stipulated to any images or postings, I misspoke. Please do not hold my error against my client."   (ECF No. 760 at 40).   In light of

the abundant incriminating evidence against the defendant, the undersigned cannot say that, had counsel not made the comment regarding a stipulation, the outcome of the proceedings would have been different.

Defendant next faults counsel for failing to object to the introduction of evidence. He reiterates the issue raised in Ground One of this motion, which is without merit. Defendant also claims certain exhibits introduced at trial differed from the exhibits provided in discovery. Although defendant describes an alleged discrepancy between documents produced in discovery and exhibits introduced at trial, he does not explain the manner in which the alleged discrepancy prejudiced him. Moreover, counsel is not charged with having a photographic memory. In light of the volume of discovery and exhibits involved in this case, even if defendant's representation about the differences in documents produced in discovery and trial exhibits is true, counsel cannot be deemed constitutionally ineffective for failing to spontaneously notice and object to such evidence or, as defendant suggests, alleged "misconduct" on the part of Assistant United States Attorney Goldberg in introducing the exhibits at trial.

The Government also notes that, to the extent defendant is "crying foul" over subpoena results regarding an unmasked posting, his claim fails to satisfy either

prong of *Strickland*; it also notes defendant fails to acknowledge the presence at trial of witness William Bradford Beard, who could have clarified the issue.    (*See* ECF No. 724 at 1052-67).    The Government presented Mr. Beard's testimony in response to defense counsel's "collectively expressed consternation with business records."    (ECF No. 1112 at 19).    Defense counsel's attempt to cross-examine Beard was cut short as beyond the scope of direct.    Counsel requested the witness remain available but did not recall Beard for further questioning about the records. (ECF No. 724 at 1066-68).    In any event, the Eleventh Circuit considered and found a challenge to the admission of the business records to be "meritless" and not worthy of discussion.    *McGarity*, 669 F.3d at 1229 n.6.

Fourth, defendant notes counsel's failure to understand what he characterized as "complex technical issues with respect to Internet Protocol addresses (IP), headers, message ID's, etc . . ." and lack of preparation necessary to "navigate the complexities of the case, more specifically the issues, as he simply did not understand computers."    (ECF No. 1046 at 21).    This issue was discussed above

as a separate point and, as defendant's allegations do not rise to the level of ineffective assistance of counsel, does not support a claim of cumulative error.

Fifth, defendant argues counsel failed to impeach Donald Willis, an FBI field examiner, about a photograph he took of defendant's computer screen when agents entered the home to execute the warrant.    Defendant claims that, in order for him to destroy evidence, the computer must be running, and the running process picture Mr. Willis took displayed the computer in the "idle position."    Defendant does not indicate he brought this factual matter to counsel's attention; hence, no error can be shown.

Defendant next contends counsel failed to request or subpoena information on an email account defendant claims did not belong to him.    He also claims counsel failed to object to the introduction, as evidence of defendant's involvement with child pornography, of an email that was "spam" and went directly to defendant's junk mail box.    Defendant does not explain how either alleged failure prejudiced him under *Strickland*.    The claim thus fails.

Defendant faults counsel for not hiring an "expert witness" to challenge the IP and technical information.    Defendant does not suggest presentation of such expert testimony would have exonerated him.    Nor does he mention the defendants

collectively hired an expert who met with defendant at the jail.   (ECF No. 1112-3 at 6).   And defendant's assertion in his reply that an expert would have been able to testify he was not running a "wipe" program on his computer at the time the warrant was executed contradicts what he told law enforcement at the time the warrant was executed.   (ECF No. 1206, PSR at ¶ 48).   This claim likewise fails.

Defendant next claims counsel failed to obtain evidence that, in an unrelated matter, FBI Agent Charles Wilder "filed false payment vouchers for the payment of a non-existing witness."   The Government notes it disclosed the underlying "unrelated matter" to all defendants, which is how defendant Castleman learned of it, but maintains it was "so clearly irrelevant and unimpressive that not a single one of the seven defense attorneys thought it worth raising during trial."   Impeachment of Wilder on this collateral matter would not have changed the outcome of the proceedings, and defendant has not shown counsel's performance was deficient in that regard.   Defendant's related assertion counsel generally failed to make a "whole host of objections" or take advantage of "impeachment opportunities" is too vague to satisfy *Strickland*.

Finally, defendant asserts counsel's closing argument was constitutionally infirm.   Counsel's closing argument was not lengthy, but it was not constitutionally

deficient.   (ECF No. 760 at 36-40).   Mr. Murphy noted that much of what Mr. Keith said in his closing argument for co-defendant Freeman applied equally to his client.   Defendant's attempt to make much of his lawyer's attempt to discuss information not in evidence is unavailing.   (ECF No. 760 at 38).   Mr. Murphy noted it was not a crime to be a poor housekeeper, which his client apparently was, and argued none of the images shown to the jury had been taken from Castleman's hard drive.   Counsel faithfully noted that, throughout the 18-month investigation, only one of the subpoenas was issued on a binary post allegedly from defendant and the actual message did not reflect Castleman's IP address.   Mr. Murphy reminded the jury that John Mosman was not a credible witness and had a motivation to lie and asked that the jury not paint every defendant with the same brush because the Government had not proven its case against his client beyond a reasonable doubt. Defendant's claim that counsel implicated his client during his closing argument is not supported by the record.   In sum, taken either individually or as a whole,

defendant has not established the cumulative effect of counsel's enumerated "errors" rose to the level of a constitutional violation that would afford him relief.

     5.    <u>Failure to Challenge Authority of Foreign Officer</u>

Defendant's final claim for relief is a stand-alone claim that counsel performed deficiently because he "failed to investigate or otherwise challenge the authority of a foreign national to investigate alleged unlawful activity in the United States." (ECF No. 1046 at 45). Castleman claims he asked counsel several times during the course of the proceedings whether Powers had the authority to investigate him and, if so, the origin of this authority. According to defendant, counsel said he did not know, but then never did anything to ascertain the validity of the investigation.

The Government aptly likens Constable Power's role to that of a "covert agent" working undercover inside the criminal enterprise. (ECF No. 720 at 55, ECF No. 721 at 185). Constable Power neither issued subpoenas nor forensically searched the seized evidence because, as he testified at trial, he was not a forensic examiner. (ECF No. 720 at 138). Although he posted text, he neither uploaded nor distributed child pornography to the group while working in his undercover capacity with the FBI because this would have been against the law in the United

States, although not in Queensland.    (*See* ECF No. 720 at 102, 145; ECF No. 721 at 188-89).    Additionally, the Government notes the evidence obtained during the search of defendant's residence was obtained through a federal search warrant sworn to by an FBI agent, not Constable Power who was neither present for, nor a participant in, Defendant's post-arrest interview.

No Constitutional provision prevents United States law enforcement from utilizing the assistance of others, including civilians or foreign law enforcement officers, to assist in the investigation and prosecution of a crime, and particularly one that extends beyond national boundaries.    Even evidence procured on foreign soil is admissible in the courts of the United States provided there is no constitutional violation.    *See United States v. Emmanuel*, 565 F.3d 1324 (11th Cir. 2009); *United States v. Behety*, 32 F.3d 502 (11th Cir. 1994). Counsel was not constitutionally ineffective for failing to argue otherwise.

## CONCLUSION

For all of the foregoing reasons, the court finds defendant has failed to show any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 overcomes the high hurdle to establish a constitutional violation based on his attorney's performance.    He also has not shown an

evidentiary hearing is warranted.    Defendant's motion therefore should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it also is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    Defendant's Amended Motion to Vacate, Set Aside or Correct Sentence (ECF No. 1046) be **DENIED**.

2.    A certificate of appealability be denied.

At Pensacola, Florida, this 10th day of February 2017.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.


Case Nos.: 3:08cr22/LAC/CJK; 3:13cv560/LAC/CJK